Filed 6/11/26  P. v. Garner CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| THE PEOPLE,<br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JARVIS GARNER,<br>　　　Defendant and Appellant. | C102729<br><br>(Super. Ct. No. STK-CR-FE-2001-0009057) |

Defendant Jarvis Garner appeals from an order denying his petition for recall and resentencing under Penal Code[1] section 1170, subdivision (d)(1).  At age 15, defendant was sentenced to a determinate prison term of 50 years after he pled guilty to four felonies.  On appeal, he contends the trial court erred in denying his petition because his 50-year sentence is the functional equivalent of a term of life without the possibility of parole (LWOP), making him eligible for relief under section 1170, subdivision (d)(1).  The Attorney General concedes that defendant's 50-year determinate sentence is the functional equivalent of LWOP and urges reversal.  The People's representative in the trial court, the San Joaquin County District Attorney's Office, appears as amicus curiae to oppose the concession and seek affirmance of the trial court's order.  We conclude defendant's sentence is not the functional equivalent of LWOP and therefore affirm.

---

[1]　　　Undesignated section references are to the Penal Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

A detailed recitation of the facts underlying defendant's convictions is unnecessary for the issues raised on appeal. Briefly, when defendant was 14 years old, he and his 18-year-old codefendant robbed the victim and her boyfriend, kidnapped the victim at gunpoint, and took turns raping her. Defendant pled guilty to: (1) carjacking (§ 215, subd. (a)); (2) rape by force in concert with another person (§ 264.1); (3) oral copulation in concert with another person (§ 288a, subd. (d)); (4) sodomy in concert with another person (§ 286, subd. (d)); and (5) enhancements under sections 12022.53, subdivision (b), and 12022.3, subdivision (a).

In December 2002, the trial court sentenced defendant, by then 15 years old, to a determinate sentence of 50 years in state prison.

On June 28, 2024, defendant filed a petition for resentencing under section 1170, subdivision (d)(1), and the Fourth District Court of Appeal's decision in *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*). The trial court denied the petition. It determined section 1170, subdivision (d)(1), did not apply because defendant was not sentenced to " 'life without the possibility of parole,' but a determinate term of 50 years." Further, *Heard* did not apply to defendant because defendant's 50-year determinate sentence was not the functional equivalent of LWOP like the sentence the court imposed in *Heard*.

Defendant timely appealed.

DISCUSSION

Defendant argues, based on *Heard*, that his 50-year determinate sentence is the functional equivalent of LWOP and the trial court therefore erred in denying his petition under section 1170, subdivision (d)(1). Specifically, he contends that given that "the average age of death for a California inmate [is] 54 years," defendant's 50-year determinate sentence made it unlikely defendant would be released before he died and

2

"guarantees that he [would] not be released in time to be rehabilitated and become a productive and respected member of the citizenry."

The Attorney General, as the People's representative on appeal, concedes that under *Heard* defendant "received a de facto LWOP sentence" (boldface and some capitalization omitted), and agrees we should remand with directions for the trial court to hold a hearing on defendant's petition. To support his concession, the Attorney General cites statistical evidence regarding the life expectancy of Black Californians (74.6 years).

Our court requested supplemental briefing from the parties on two questions— whether defendant is eligible for youth offender parole consideration under section 3051 and, if so, whether his 50-year determinate sentence remains the functional equivalent of LWOP.

In a supplemental letter brief, defendant acknowledges his eligibility for a youth offender parole hearing under section 3051. Relying on the analysis in *Heard*, however, he nonetheless contends that his sentence remains the functional equivalent of LWOP because he was sentenced before section 3051 was enacted, and he filed his petition under section 1170, subdivision (d)(1). Under that provision, he argues, the court must determine whether the sentence he received *when he was sentenced* is the functional equivalent of LWOP, and the later enactment of section 3051 does not impact whether the sentence he received in 2002 was the functional equivalent of LWOP. Defendant also asserts in his supplemental brief that his parole hearing was canceled in 2016 and that his next parole hearing is scheduled for July 2047 at age 60.

The Attorney General also filed a supplemental letter brief. He likewise acknowledges that defendant was eligible for a parole hearing under section 3051, but citing our Supreme Court's decision in *People v. Contreras* (2018) 4 Cal.5th 349, 369 (*Contreras*), maintains that defendant's 50-year determinate sentence is the functional equivalent of LWOP. The Attorney General fails to meaningfully answer the second question posed by this court.

After the parties submitted their supplemental briefs, we granted the District Attorney of San Joaquin County's application to file an amicus curiae brief "to address matters not fully examined by the parties' briefs." In their brief, amicus curiae argues that defendant's sentence is not the functional equivalent of LWOP for two reasons. First, defendant received a determinate sentence of 50 years. "[B]ased upon the sentence itself, and his age at the time of the offense, [defendant] does have a realistic opportunity for release within his natural life expectancy." Second, "section 3051 should be considered in determining if a sentence is the functional equivalent of LWOP, because parole consideration may greatly impact an inmate's meaningful opportunity for release within his or her natural life expectancy." "Based upon [defendant's] sentence … [defendant] should have been eligible for a parole hearing during his 15th year of incarceration."

Amicus curiae also argues that although defendant stated in his supplemental brief that his 2016 suitability hearing was canceled, defendant did "not provide the full picture." Amicus curiae asserts, "that [defendant] has been convicted of a new offense resulting in a subsequent 25 to life sentence impacting [his] parole eligibility." Assuming that defendant's life expectancy was about 74.6 years as asserted in the People's brief, defendant "is still eligible for release within his natural life expectancy in 2047 at the age of 60," despite any additional sentence. For those reasons, amicus curiae asks this court to find that defendant's determinate sentence is not the functional equivalent of LWOP.

In his reply, defendant addresses amicus curiae's assertion that he has a realistic opportunity of being released within his natural life expectancy. Defendant argues that his life expectancy could be significantly shorter than the 74.6 years amicus curiae referenced, and that "[t]he trial court should assess this factor upon remand." In response to amicus curiae's assertion that he suffered a subsequent conviction and determinate life sentence in prison, defendant contends that even if the conviction and sentence were upheld, they "cannot support the trial court's ruling that [defendant's] sentence was not

4

the functional equivalent of LWOP," because the *Heard* analysis focuses on "defendant's sentence at the time it was imposed." The possibility that he "could be released under section 3051 has no impact on whether his sentence was the functional equivalent of LWOP."

A. *Standard of Review and Legal Principles*

We review the trial court's denial of a petition for recall and resentencing for abuse of discretion. (*People v. Frazier* (2020) 55 Cal.App.5th 858, 863-864.) A court abuses its discretion when it bases its decision on an incorrect legal standard. (*People v. Knoller* (2007) 41 Cal.4th 139, 156.) Whether a defendant is eligible to petition for recall and resentencing under section 1170, subdivision (d)(1)(A) is a question of statutory interpretation that we review de novo. (*People v. Walker* (2024) 16 Cal.5th 1024, 1032.)

*United States Supreme Court Decisions*

Beginning with *Roper v. Simmons* (2005) 543 U.S. 551 (*Roper*), the United States Supreme Court announced several limitations on the sentencing of juvenile offenders grounded in the Eighth Amendment's prohibition against cruel and unusual punishment. In *Roper*, the Court held that the Eighth Amendment prohibited the execution of juvenile offenders. (*Roper,* at p. 568.) The Court explained that the death penalty is reserved for the worst offenders "who commit 'a narrow category of the most serious crimes' and whose extreme culpability makes them 'the most deserving of execution.' " (*Ibid.*) The general differences between juveniles and adults, including the documented lack of maturity and underdeveloped sense of responsibility in youth, their vulnerability or susceptibility to negative influence and peer pressure, and the fact that their personality traits are less fixed, "render suspect any conclusion that a juvenile falls among the worst offenders." (*Id.* at pp. 569-570.)

After categorically banning the death penalty for juvenile offenders in *Roper*, the United States Supreme Court also held that the Eighth Amendment prohibition against

5

cruel and unusual punishment prohibits LWOP sentences for juvenile offenders who commit nonhomicide offenses (*Graham v. Florida* (2010) 560 U.S. 48, 74 (*Graham*)), and automatic LWOP sentences for juvenile offenders convicted of homicide (*Miller v. Alabama* (2012) 567 U.S. 460, 479 (*Miller*)).  The court further explained in *Miller* that "[d]eciding that a 'juvenile offender will forever be a danger to society' " requires a judgment that the offender " 'is incorrigible.' " (*Id.* at pp. 472-473.)  " '[I]ncorrigibility is inconsistent with youth.' " (*Id*. at p. 473.)  "Life without parole 'forswears altogether the rehabilitative ideal.' [Citation.]  It reflects 'an irrevocable judgment about [an offender's] value and place in society,' at odds with a child's capacity for change." (*Ibid*.)  The Court's decisions are rooted in its conclusion that the Eighth Amendment's prohibition against cruel and unusual punishment encompasses the " 'foundational principle' " that the State cannot proceed in imposing its "most severe penalties on juvenile offenders … as though they were not children." (*Miller,* at p. 474.)

*California Case Law and Legislative Enactments*

Based on the Eighth Amendment limitations the United States Supreme Court identified in *Roper*, *Graham*, and *Miller*, the California Supreme Court held in *People v. Caballero* (2012) 55 Cal.4th 262 that the prohibition on LWOP terms for juvenile offenders sentenced on nonhomicide offenses also applied to sentences that were the functional equivalent of LWOP.  (*Id*. at p. 268.)  Our Supreme Court concluded that "sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment." (*Ibid*.)

In response to the United States Supreme Court and California Supreme Court decisions, the California Legislature enacted former section 1170, subdivision (d)(2), now subdivision (d)(1), to create " 'a procedural mechanism for resentencing of defendants who were under the age of 18 at the time of the commission of their offenses

6

and who were given [life without parole] sentences.' " (*Heard, supra*, 83 Cal.App.5th at pp. 617-618.) Under section 1170, subdivision (d)(1), "[w]hen a defendant, who was under 18 years of age at the time of commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing."

After our Supreme Court held in *In re Kirchner* (2017) 2 Cal.5th 1040 that section 1170, subdivision (d)(1) inadequately addressed the concerns the United States Supreme Court identified in *Miller* (*In re Kirchner,* at pp. 1043, 1052-1056), the Legislature enacted Senate Bill No. 260 (2013-2014 Reg. Sess.) to "explicitly to bring juvenile sentencing into conformity with *Graham*, *Miller*, and *Caballero*." (*People v. Franklin* (2016) 63 Cal.4th 261, 277 (*Franklin*).) "At the heart of Senate Bill No. 260 was the addition of section 3051," which requires youth offender parole board hearings held during the 15th, 20th, or 25th year of a juvenile offender's incarceration, depending on the offender's controlling offense. (*Ibid*.)

In *Franklin*, which was decided after section 3051 was enacted, our Supreme Court confronted the issue of whether a juvenile offender's two mandatory consecutive 25-years-to-life terms for homicide violated the Eighth Amendment under *Miller*. (*Franklin, supra,* 63 Cal.4th at p. 271.) After holding that *Miller* applies to functionally equivalent LWOP sentences like the sentence defendant received when he was first sentenced, the Court concluded that section 3051 "mooted" defendant's "*Miller* claim" because defendant is now serving a life sentence that includes a meaningful opportunity for release during his 25th year of incarceration. (*Franklin,* at pp. 276-277, 280.) "Such a sentence is neither LWOP nor its functional equivalent." (*Id*. at p. 280.)

### 1. People v. Heard

In *Heard*, the defendant filed a petition for resentencing under section 1170, former subdivision (d)(2), now subdivision (d)(1), contending that because his sentence of 23 years plus 80 years-to-life was a "de facto life without parole sentence," he was eligible for relief under section 1170, subdivision (d)(1). (*Heard, supra*, 83 Cal.App.5th at p. 621.) The trial court denied the petition, concluding that defendant was statutorily ineligible for relief under the statute. (*Id*. at pp. 621-622.)

On appeal, defendant argued that he was eligible for relief under the provision. He also argued that the denial of his petition violated equal protection. (*Heard, supra*, 83 Cal.App.5th at p. 622.) The court of appeal agreed as to defendant's equal protection claim, holding that "denying juvenile offenders sentenced to the functional equivalent of [LWOP] the opportunity to petition for resentencing under this provision violates the constitutional guarantee of equal protection of the laws." (*Ibid*.)

In concluding that defendant had a right to petition for recall under section 1170, subdivision (d)(1), under the Equal Protection Clause, the court rejected the argument that "Heard's eligibility for a youth offender parole hearing under section 3051" meant that his sentence could not be considered "a de facto" LWOP sentence. (*Heard, supra*, 83 Cal.App.5th at p. 628.) The court explained that the statute's use of the phrase "was sentenced" refers to defendant's sentence as it existed before section 3051 was enacted. (*Heard,* at pp. 628-629.) "At the time Heard was sentenced, section 3051 had not yet been enacted, and he was required to serve his determinate term plus the full minimum period of confinement of each of his life sentences before becoming parole eligible. [Citation]. Put another way, Heard would have to serve 103 years before becoming parole eligible. Such a sentence constitutes a de facto [LWOP] sentence." (*Id*. at p. 629.)

The court further explained that *Franklin* did not require a different result because although defendant's "sentence as it currently operates is no longer the functional equivalent of [LWOP], this does not change the fact that the sentence was a de facto

8

[LWOP] sentence at the time it was imposed." (*Heard, supra*, 83 Cal.App.5th at p. 629, italics omitted.)

The opinions in *People v. Sorto* (2024) 104 Cal.App.5th 435 and *People v. Bagsby* (2024) 106 Cal.App.5th 1040 followed *Heard*'s reasoning, finding that the availability of a parole hearing under section 3051 does not affect a defendant's eligibility for resentencing under section 1170, subdivision (d)(1). (*Sorto,* at p. 448 ["We agree with *Heard* and *Lopez* that the plain language of section 1170 [,subdivision] (d) does not require that the defendant currently be serving an LWOP sentence."]; *Bagsby,* at p. 1054 [stating that *Heard* was correctly decided].)

### 2. People v. Isayev

In *People v. Isayev* (2025) 113 Cal.App.5th 1117, review granted November 12, 2025, S292860, briefing deferred (*Isayev*), a different panel of this court addressed the question of whether a defendant's "50 years-to-life sentence [was] functionally equivalent to LWOP for purposes of section 1170, subdivision (d)." (*Id*. at p. 1141.) Rejecting the analysis in *Heard*, we held that defendant's sentence was not the functional equivalent of an LWOP term because he was eligible for a parole hearing under section 3051. (*Isayev,* at p. 1142.) Specifically, we rejected *Heard's* reasoning that "because section 1170, subdivision (d)(1), uses the phrase " 'was sentenced,' " eligibility for relief depends only on the character of the original sentence imposed, not the sentence being served at the time of the petition." (*Ibid*.) We explained that in enacting section 1170, subdivision (d), the Legislature sought "to provide (certain) juvenile offenders serving LWOP terms an avenue 'to seek recall of their sentences and resentencing to a term that includes an opportunity for parole.' " (*Isayev,* at p. 1142, quoting *In re Kirchner, supra*, 2 Cal.5th at p. 1049.) "Given this purpose, it seems clear to us that the focus of section 1170, subdivision (d)(1), is the sentence being served *at the time the petition for recall*

*and resentencing is filed,* not whatever sentence may have been imposed at the original sentencing." (*Isayev,* at p. 1142.)

Section 3051 transformed LWOP terms for youthful offenders and terms that are the functional equivalent of LWOP into sentences where a youthful offender is eligible for a parole hearing either during their 15th, 20th, or 25th year of incarceration, depending on the sentence for the controlling offense. (*Isayev, supra,* 113 Cal.App.5th at p. 1144, citing *Franklin, supra*, 63 Cal.4th at pp. 279, 281.) "Such a sentence is neither LWOP nor its functional equivalent." (*Franklin,* at p. 280.) And because defendants eligible for a parole hearing under section 3051 are not serving an LWOP term or its functional equivalent, they are ineligible for relief under section 1170, subdivision (d)(1). (*Isayev,* at p. 1144.)

Against this background, we consider defendant's claim.

B.      *Analysis*

Defendant asks us to follow the " 'was sentenced' reasoning" in *Heard* and remand for the trial court to hold a hearing on defendant's petition because "[t]he fact that [defendant] could be released under section 3051 has no impact on whether his sentence was the functional equivalent of LWOP." The Attorney General, relying on *Heard* and *Contreras* concedes defendant's 50-year sentence is the functional equivalent of LWOP. For the reasons we explain below, we do not accept the concession and see no reason to depart from the reasoning in *Franklin* and *Isayev*, which defendant and the Attorney General fail to address in their briefing.

As an initial matter, we decline to consider the extrinsic data and statistical evidence cited by the parties and amicus curiae regarding life expectancy because "[t]he record … contains no findings by the trial court on these matters." (*Contreras, supra,* 4 Cal.5th at p. 363.) More importantly, as our Supreme Court explained in declining "to adopt a constitutional rule that employs a concept of life expectancy whose meaning

10

depends on the facts presented in each case…. [¶] … The proper starting point is not a life expectancy table but the reasoning of the high court in *Graham*." (*Id.* at pp. 363-364.)

"*Graham* 'does prohibit States from making the judgment at the outset that those [youthful] offenders never will be fit to reenter society.' " (*Contreras, supra,* 4 Cal.5th at p. 367.) As even *Heard* acknowledged, "[t]o avoid violating the Eighth Amendment … states 'need not guarantee the [nonhomicide] offender eventual release' but must provide 'some realistic opportunity to obtain release.' " (*Heard, supra*, 83 Cal.App.5th at p. 616, quoting *Graham, supra,* 560 U.S. at p. 82.) Section 3051 does that. (*Franklin, supra*, 63 Cal.4th at pp. 279-280.) Therefore, we continue to disagree with *Heard*'s reasoning that when determining whether a juvenile offender's lengthy sentence is the functional equivalent of LWOP for purposes of section 1170, subdivision (d)(1) eligibility, we need not consider the effect of section 3051 on the defendant's sentence. (*Isayev, supra*, 113 Cal.App.5th at pp. 1141-1142.)

By operation of law, section 3051 transformed defendant's sentence from a determinate sentence of 50 years to one where he was eligible for parole in his 15th year of incarceration at the age of 30. (§ 3051, subd. (b)(1); *Franklin, supra*, 63 Cal.4th at pp. 278–279.) In doing so, section 3051 provided him a "meaningful opportunity to obtain release based on demonstrated *maturity* and *rehabilitation*." (*Contreras, supra*, 4 Cal.5th at pp. 360, 364, italics added; see also *Franklin*, at pp. 279-280 [stating that section 3051 provides "meaningful opportunity for release"].) Therefore, "[t]he retroactive operation of section 3051 on [] defendant's sentence is not irrelevant." (*Isayev*, *supra*, 113 Cal.App.5th at p. 1144.) Because section 3051 provides the opportunity for a parole hearing to obtain release based on his demonstrated maturity and rehabilitation during the 15th year of incarceration, defendant's sentence is not the functional equivalent of LWOP. (*Isayev,* at p. 1144.)

We note that defendant and amicus curiae aver that defendant's parole hearing during his 15th year of incarceration was canceled. Although amicus curiae speculates about the reason for that, the record before us provides no information that negates defendant's statutory eligibility for a youth offender parole hearing under section 3051. In fact, both defendant and the Attorney General acknowledge defendant's eligibility. Therefore, on the record before us, we must presume that defendant is eligible for a hearing under section 3051, which negates any claim that his 50-year determinate sentence is the functional equivalent of LWOP.[2] (*Franklin, supra*, 63 Cal.4th at pp. 279-280.)

For these reasons, we reject the Attorney General's concession and conclude that a determinate sentence of 50 years where defendant was eligible for a youth offender parole hearing during his 15th year of incarceration at the age of 30, is not the functional equivalent of LWOP. (*Isayev, supra*, 113 Cal.App.5th at p. 1144.) As such, the trial court did not err by denying defendant's section 1170, subdivision (d)(1) petition.

---

[2]     Should defendant's ineligibility for a parole hearing under section 3051 be established in the future, section 1170, subdivision (d) still permits youthful offenders to file petitions in their 24th and 25th year of incarceration.

## DISPOSITION

The judgment is affirmed.

\s\ _____
KRAUSE, J.

We concur:

\s\ _____
EARL, P. J.

\s\ _____
MAURO, J.